Mark. D. Rutter (58194)
John J. Stumreiter (58415)
Esther Teixeira (346431)
CARPENTER, ROTHANS & DUMONT, LLP
500 S. Grand Avenue, 19th Floor
Los Angeles, CA  90071
Tel.: (213) 228-0400 / Fax: (213) 228-0401
mrutter@crdlaw.com; jstumreiter@crdlaw.com;
eteixeira@crdlaw.com

Attorneys for Defendants City of Beverly Hills, a public entity (sued as itself and erroneously sued as Beverly Hills Police Department); Capt. Max Subin, Shelly Ovrom, Lt. Kevin Orth, Sgt. Dale Drummond, Lt. Renato Moreno, Capt. Mark Rosen, Lt. Shan Davis, Lt. Terry Nutall, Capt. Elizabeth Albanese, and Det. Mark Schwartz as current or former employees of the City of Beverly Hills

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CEJA, an individual, FINN O' MCCLAFFERTY, an individual, BRIAN WEIR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF BEVERLY HILLS, a California municipal corporation, THE BEVERLY HILLS POLICE DEPARTMENT, a municipal agency, CAPT. MARK ROSEN, an individual, CAPT. LINCOLN HOSHINO, an individual, CAPT. ELIZABETH ALBANESE, an individual, CAPT. MAX SUBIN, an individual, SHELLY OVROM, an individual, LT. DAVID HAMEL, an individual, LT. SHAN DAVIS, an individual, LT. TERRY NUTALL, an individual, LT. RENATO MORENO, an individual, CHIEF DAVID SNOWDEN, an individual, OFFICER ANNE MARIE LUNSMAN, an individual, LT. KEVIN ORTH, an individual, SGT. DALE DRUMMOND, an individual, DET. MARK SCHWARTZ, an individual, and DOES ONE through ONE HUNDRED (1-100),<br><br>Defendants. | Case No.: 2:22-cv-05884-MEMF-AGR<br>Judge:  Hon. Maame Ewusi-Mensah Frimpong<br>Cplt. filed: 08/18/2022<br><br>**ABOVE-NAMED DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT AND CLAIMS THEREIN; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  Oct. 5, 2023<br>Time: 10:00 a.m.<br>Loc.:   Courtroom 8B<br>           U.S. Court House<br>           350 W. First St.<br>           Los Angeles CA 90012<br><br>(LR 7-3 satisfied by communications on 3/30/23. 3/31/23, and 6/27/23, as shown in the accompanying declaration) |

TABLE OF CONTENTS

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 7

INTRODUCTION .................................................................................................... 7

STATEMENT OF FACTS ....................................................................................... 8

   A.   Background: disputes between plaintiffs and BH. ....................................... 8

   B.   Plaintiffs reach settlement agreements with BH. ........................................ 8

   C.   Plaintiffs apply to CalPERS for IDR. .......................................................... 9

   D.   CalPERS receives a tip that plaintiffs are not IDR eligible. ...................... 10

   E.   CalPERS determines that plaintiffs are not eligible for IDR. ................... 10

   F.   Plaintiffs unsuccessfully appealed that determination. ............................. 10

   G.   In this lawsuit, plaintiffs blame the present defendants for their loss of supposed IDR benefits. .................................................................................................. 11

ARGUMENT ......................................................................................................... 11

I.   AS AGAINST EACH DEFENDANT, PLAINTIFFS' ALLEGATIONS OF DEFENDANTS' WRONGDOING ARE INADEQUATE UNDER *TWOMBLEY* AND *IQBAL* ........................................................................ 11

   A.   The Second Amended Complaint does not inform each defendant of what acts he or she is charged with. ................................................................... 12

   B.   That deficiency is not save by alleging a conspiracy. ............................... 13

   C.   The pleading fails to show causation. ........................................................ 13

   D.   The anonymous tip was not made under color of law and thus does not give rise to Section 1983 liability. ............................................................ 15

II.   THE SECOND AMENDED COMPLAINT LACKS *MONELL* ALLEGATIONS WHICH ARE NEEDED TO MAKE BH LIABLE. ............ 17

CONCLUSION ...................................................................................................... 18

DECLARATION OF JOHN J. STUMREITER ......... **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**CASES**

*ARC Ecology v. U.S. Dep't of Air Force,*
  411 F.3d 1092, 1096 (9th Cir. 2005) ................................................................ 13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................... 8, 13, 14, 15, 16

*Bd. of Cnty. Comm'rs v. Brown,*
  520 U.S. 397 (1997) ............................................................................................ 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................... 13, 15, 16

*Cattie v. Wal-Mart Stores, Inc.,*
  504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................... 15

*Davis v. Ellensburg,*
  869 F.2d 1230 (9th Cir. 1989) ........................................................................... 19

*Doe v. United States,*
  419 F.3d 1058 (9th Cir. 2005) ........................................................................... 13

*Gillette v. Delmore,*
  979 F.2d 1342 (9th Cir. 1992) ........................................................................... 18

*Gritchen v. Collier,*
  254 F.3d 807 (9th Cir. 2001) ............................................................................. 16

*Harris v. City of Roseburg,*
  664 F.2d 1121 (9th Cir. 1981) ........................................................................... 15

*In re Gilead Sciences Sec. Litig.,*
  536 F.3d 1049 (9th Cir. 2008) ........................................................................... 13

*In re Gilead Sciences Sec. Litig.,*
  536 F.3d 1049 (9th Cir. 2008) ........................................................................... 13

*Leer v. Murphy,*
  844 F.2d 628 (9th Cir. 1988) ............................................................................. 15

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .................................................................................................. 15

*Meehan v. Los Angeles County,*
   856 F.2d 102 (9th Cir. 1988) .................................................................................... 19

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978) ......................................................................................... 10, 18

*Morse v. North Coast Opportunities, Inc.,*
   118 F.3d 1338 (9th Cir. 1997) .................................................................................. 15

*Moyo v. Gomez,*
   32 F.3d 1382 (9th Cir. 1994) .................................................................................... 13

*Naffe v. Frey,*
   789 F.3d 1030 (9th Cir. 2015) .................................................................................. 16

*Parratt v. Taylor,*
   451 U.S. 527 (1981) .................................................................................................. 16

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) .................................................................................... 13

*Trevino v. Gates,*
   99 F.3d 911 (9th Cir. 1996) ...................................................................................... 18

*Tsao v. Desert Palace, Inc.,*
   698 F.3d 1128 (9th Cir. 2012) .................................................................................. 18

*United States v. Classic,*
   313 U.S. 299 (1941) .................................................................................................. 16

*Van Ort v. Est. of Stanewich,*
   92 F.3d 831 (9th Cir. 1996) ...................................................................................... 16

*West v. Atkins,*
   487 U.S. 42 (1988) .................................................................................................... 16

*Wood v. Housewright,* 900 F.2d 1332
   (9th Cir. 1990) ........................................................................................................... 15

**STATUTES**

42 U.S.C. § 1983 .................................................................................................. 13, 14

**RULES**

Rule 12(b)(6). F. R. Civ. P. ............................................................. 7, 10, 12, 13, 16

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE that on October 5, 2023, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8B, U. S. Court House, 350 West First Street, Los Angeles, California 90012, Defendants CITY OF BEVERLY HILLS, a public entity (sued as itself and erroneously sued as the Beverly Hills Police Department); CAPT. MAX SUBIN, SHELLY OVROM, LT. KEVIN ORTH, SGT DALE DRUMMOND, AND LT. RENATO MORENO, as employees of the City of Beverly Hills; and CAPT. MARK ROSEN, LT. SHAN DAVIS, AND LT. TERRY NUTALL, as former employees of the City of Beverly Hills, will and hereby do move, jointly and severally, to dismiss Plaintiffs' Second Amended Complaint and each claim therein pursuant to Rule 12(b)(6), F. R. Civ. P.

The grounds of this motion are that the Second Amended Complaint fails to state a claim on which relief may be granted as to each defendant.

This motion is based on this Notice; the attached Memorandum of Points and Authorities; the attached Declarations and Exhibits; the files, records, and pleadings of this action; the accompanying Request for Judicial Notice and exhibits thereto, and such other matter as properly may be brought before the Court.

This motion follows the conferences of counsel pursuant to L.R. 73 on March 30 and 31, 2023 and June 27, 2023, as set forth in the declarations and exhibits.

Dated: July 6, 2023.　　　　　CARPENTER, ROTHANS & DUMONT, LLP

By: /s/ *John J. Stumreiter*
Mark Rutter/John J. Stumreiter/Esther Teixeira
Attorneys for Defendants City of Beverly Hills, a public entity (sued as itself and erroneously sued as Beverly Hills Police Department); Capt. Max Subin, Shelly Ovrom, Lt. Kevin Orth, Sgt. Dale Drummond, Lt. Renato Moreno, Capt. Mark Rosen, Lt. Shan Davis, Lt. Terry Nutall, Capt. Elizabeth Albanese, and Det. Mark Schwartz, as current or former employees of the City of Beverly Hills

6

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT


## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In this one-count Second Amended Complaint ("SAC"), each plaintiff claims that he was a police officer with the City of Beverly Hills Police Department ("BHPD") and that he made a settlement agreement with the City of Beverly Hills ("BH"), which operates BHPD.

Under those agreements, part of the benefit to each plaintiff was the opportunity to pursue disability/retirement claims with CalPERS. Each plaintiff claimed to have been injured and to be entitled to Industrial Disability Retirement ("IDR"), which is controlled by CalPERS.

Plaintiff claim, however, that at a later date, some unspecified person(s) gave an anonymous tip to CalPERS that led CalPERS to determine that plaintiffs were not in fact entitled to those disability-related benefits. Plaintiffs claim that that tip was made in retaliation for the plaintiffs' intent to testify against some of the individual defendants in disputes between those individuals and BH.

As against all defendants, the SAC is deficient under *Twombley* and *Iqbal* for at least the following reasons:

  (a) The SAC does not specify any facts to show what individual defendants did, much less who made the tips.

  (b) The attempt to make everyone liable as a conspirator is mere speculation, not supported by allegations of fact and lacking in allegations to show a conspiracy.

  (c) The SAC fails to make a sufficient allegation of causation. Moreover, the lack of causation is affirmatively shown by the circumstances disclosed by the SAC, by the actual text of the settlement agreements mentioned therein, and by the judicially-noticeable decisions of CalPERS regarding plaintiffs' IDR claims. Those documents show that the loss of IDR moneys was due to a decision of

CalPERS, not by any defendant. Plaintiffs cannot avoid this fact by claiming some defendant tipped off CalPERS. The SAC does not allege that the tips were false. Thus, plaintiffs are suing on the theory that defendants are liable because some defendant supposed gave *correct* information to CalPERS that led CalPERS to conclude that plaintiffs were not eligible for IDR benefits from CalPERS. How can defendants be tagged with liability because someone passed allegedly *true* information?

(d)   The SAC does not show that anyone acted under color of law, as required by Section 1983, in giving information to CalPERS.

As against BH, the SAC is deficient for the further reason that the SAC lacks the allegations necessary under *Monell* for a claim against a municipality.

For these shortcomings, the Second Amended Complaint must be dismissed as to each plaintiff and as to each defendant.

## STATEMENT OF FACTS

**A.   Background: disputes between plaintiffs and BH.**

Plaintiffs Richard Ceja, Finn McClafferty, and Brian Weir ("Plaintiffs") are former police officers and employees of Defendant City of Beverly Hills ("BH") in the Beverly Hills Police Department ("BHPD"). (2d Amd. Cplt., ¶¶ 3-5.)

By 2015, each plaintiff had an ongoing dispute with BH regarding his employment; and each plaintiff was in some kind of a proceeding (whether via administrative processes, litigation, arbitration or a combination thereof). (2d Am. Cplt., ¶ 32; Req. Jud. Ntc., Exhs A, B, C.) Plaintiffs also claimed they had each sustained physical injuries while performing their work as police officers.

**B.   Plaintiffs reached settlement agreements with BH.**

In July 2015, September 2015, and May 2016, Plaintiffs and BH entered into

settlement agreements.[1]  Plaintiffs were each represented by counsel during the execution of the agreement.  In their settlement agreements, Plaintiffs agreed to dismiss their disciplinary appeals and civil litigation actions against the City and to terminate their employment.  A "no re-employment" clause in the agreements provided that Plaintiffs were waiving their reinstatement rights and agreeing not to seek or accept future work from the City.  The City, in turn, paid Ceja and Weir lump sums of $900,000 and $800,000, respectively, and approved monthly payments of $18,995 for McClafferty to resolve their claims of physical injury, illness, and emotional distress. Under the settlement agreements,

> some of their future recompense [would be] coming in the form of disability and/or retirement income which was controlled by CalPERS because each of the Plaintiffs had some form of work injury.

(*Id.*, ¶ 32.)[2]

### C. Plaintiffs applied to CalPERS for IDR.

On May 7, 2011, June 1, 2015, and May 23, 2016, Plaintiffs Ceja, McClafferty, and Weir, respectively, submitted their applications for IDR to CalPERS.  CalPERS requested that the City determine whether Plaintiffs were substantially incapacitated from industrial injuries and thus eligible for IDR.  The City signed certifications of disability for each Plaintiff, certifying to CalPERS that Plaintiffs were disabled from the performance of their individual job duties and eligible for IDR.  Thereafter, on August and October 2015 and November 2016,

---

[1] In the First Amended Complaint, plaintiffs had claimed that the settlement agreements were confidential.  (1st Am. Cplt., ¶ 32, 7:4.).  The claim of confidentiality was removed in the Second Amended Complaint.  (See 2d A. Cplt, ¶ 32, 7:5.)  Plaintiffs now claim only that the agreements were approved in closed sessions of the City Council without public discussion (*id.*, at 7:8) and that "[a]s a practical matter," the terms were known only to plaintiffs, defendants, and their respective counsel (*id.* at 7:10-7:15).

[2] Plaintiffs allege that the City agreed "not to take any action in bad faith to interfere" with plaintiffs' CalPERS rights. (2d Amd. Cplt, ¶ 32.) Language to that effect appears in two of the three agreements.

9

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

CalPERS approved Plaintiffs' IDR applications and Plaintiffs began receiving IDR benefits. (See Req. Jud. Ntc., Exhs. D, E.)

### D. CalPERS received a tip that plaintiffs are not IDR eligible.

On March 28, 2018, CalPERS received an anonymous ethics complaint through its web portal, claiming that Plaintiffs' retirements were "manufactured" by the City and used as substitutes for disciplinary actions. The tipper indicated that the primary issue of the complaint was "Retirement Benefits Fraud or Abuse: Public Agency Activities," and named several managing and directing employees of the City, as well the City Attorney and the Chief of BHPD, as parties involved in the alleged fraud. The tipper disclosed that he or she had become aware of the alleged violation by "hear[ing] some portions of [it] from those directly involved," and that the alleged violation was "common knowledge among BHPD employees." (*Id.*)

CalPERS ultimately referred the matter to the California Department of Justice, Office of the Attorney General. The Office of the Attorney General began its investigation.

### E. CalPERS determined that plaintiffs are not eligible for IDR.

Based on the findings in that investigation, CalPERS determined that Plaintiffs were ineligible for IDR, primarily because, pursuant to a CalPERS precedential decision and its progeny, a necessary requisite for disability retirement is the potential for reinstatement if the employee is determined by CalPERS to no longer be disabled. Because Plaintiffs had resigned and waived their reinstatement rights in the settlement agreement, they could not satisfy this requirement. (*Id.*)

On February 21, 2020, Plaintiff McClafferty was notified by CalPERS that his IDR would be cancelled. Plaintiffs Weir and Ceja were notified of the cancellation of their respective IDR benefits on May 4, 2020.

### F. Plaintiffs unsuccessfully appealed that determination.

Plaintiffs appealed the cancellations with CalPERS and exercised their right to a hearing before an Administrative Law Judge ("ALJ") with the Office of

Administrative Hearings ("OAH"). A hearing was held on December 21 through December 23, 2020. Plaintiffs and City were represented by their respective counsels. The ALJ held that CalPERS's cancellation of Plaintiffs' IDRs was appropriate because Plaintiffs' separation from employment with the City without any right to return to service precluded their eligibility for disability benefits. (Req. Jud. Ntc., Exh. D.) CalPERS's Board of Administration adopted the OAH's proposed decision and affirmed the cancellation of Plaintiffs' IDRs. (*Id.*, Exh. E.)

### G. In this lawsuit, plaintiffs blame the present defendants for their loss of supposed IDR benefits.

In this action under 42 U.S.C. § 1983, plaintiffs claim that the tipoff to CalPERS was retaliation by defendants against Plaintiffs for their exercise of First Amendment rights.

According to plaintiffs, between 2017 and 2019 defendants who were members of the supposed "Defendant Control Group" had filed lawsuits against BH and BHPD. (2d Am. Cplt., ¶ 33.) In such lawsuits, the present plaintiffs allegedly "offered, and were preparing, to testify" against Defendants. *Id.* "[T]o dissuade them from, and punish them for, exercising their constitutional right to testify[,]" Defendants "conspired" and sent the anonymous tip to CalPERS to cause Plaintiffs to "lose their benefits." *Id.* Plaintiffs claim that the tips "ultimately resulted in Plaintiffs' losing significant benefits in an amount in excess of $5,000,000.00." (2d Amd. Cplt, ¶ 33.)

## ARGUMENT

### I. AS AGAINST EACH DEFENDANT, PLAINTIFFS' ALLEGATIONS OF DEFENDANTS' WRONGDOING ARE INADEQUATE UNDER *TWOMBLEY* AND *IQBAL.*

Under Rule 12(b)(6), F. R. Civ. P., a complaint must be dismissed when a plaintiff's allegations fail "to state a claim upon which relief can be granted." The complaint must give each defendant "fair notice of what the claim is and the grounds

upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In other words, the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*

When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). But a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### A. The Second Amended Complaint does not inform each defendant of what acts he or she is charged with.

Actions brought under 42 U.S.C. § 1983 must allege how each named defendant personally participated to cause the deprivation of the plaintiff's rights. In *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009), the court stated:

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. [Citations omitted.] Because vicarious liability is inapplicable

to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

No effort has been made to specify what each individual did. In the First Amended Complaint, every allegation of an action taken against Plaintiffs is broadly attributed to "Defendants" without any additional information that would provide individual defendants with notice as to what they are alleged to have done.

That is not cured by facile attempt to charge each of 14 indviduals with the same alleged wrongdoing via a form complaint. The allegations against each of the 14 defendants in Paragraphs 34-47 are the same. Plaintiffs have made thohse allegations by filling in the name of a defendant into this form:

> In the alternative, Plaintiffs are informed and believes [*sic*] that Defendant _____ either primarily drafted or participated in the drafting of one or more of the ANONYMOUS COMMUNICATIONS in in agreement with the other DEFENDANTS and directed it to CalPERS with the specific purpose of retaliating against and deterring, PLAINTIFFS' ability to give testimony against the defendants and to otherwise exercise their constitutional right to address wrongdoing on the part of the DEFENDANTS.

Such fill-in-the blanks pleading is contrary to *Twombley* and *Iqbal*.

**B.     That deficiency is not save by alleging a conspiracy.**

Plaintiffs want to lump everything together by using facile and shopworn allegations of conspiracy. But there is no pleading of the formation of a conspiracy or any facts that would provide more than speculation as to whether there was a conspiracy.

**C.     The pleading fails to show causation.**

In addition, the pleading must show causation. "A person 'subjects' another to the deprivation of a constitutional right within the meaning of § 1983 if he does an

affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Wood v. Housewright*, 900 F.2d 1332, 1342 (9th Cir. 1990). The inquiry into causation must be individualized, and liability may be imposed on an individual defendant under Section 1983 only if the plaintiff can show that the individual defendant proximately caused the deprivations of his federally protected rights of which he complains. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981).

In fact, the complaint and the judicially-noticeable material show a fact that *precludes* causation, The sole cognizable injury Plaintiffs allege to have suffered is the loss of IDR benefits. Plaintiffs do not and could not allege that Defendants are directly responsible for the cancellation, because that was a decision by CalPERS. "[A] plaintiff's harm must be 'fairly traceable to the challenged action of the defendant, and not the result of some third party not before the court.'" *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 943-4 (S.D. Cal. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiffs do not allege that any information provided was false. Instead, they complain because someone provided CalPERS with information which presumably was truthful. Plaintiffs cannot and do not explain how that could be wrongdoing.

"The plausibility standard [of Twombly] is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). A plaintiff basing a cause of action on alleged constitutional violations must show that the "actions complained of are 'fairly attributable' to the government." *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1340 (9th Cir. 1997). And where, as here, there is a choice between an "obvious alternative explanation" for the challenged conduct on the one hand, and the purposeful, conspiratorial constitutional violation alleged by Plaintiffs on the other, retaliation is not a plausible conclusion for the

Court. *Iqbal* 556 U.S. at 682 (citing *Twombly*, 550 U.S. at 567).

### D. The anonymous tip was not made under color of law and thus does not give rise to Section 1983 liability.

In order to state a claim under Section 1983, the plaintiff must allege not only a violation of a constitutional right, but also that the defendant committed the violation while acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).[3] An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). "Just because [a defendant is a government employee] does not mean that everything [the defendant] does is state action." *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001). A state employee who is on duty, or otherwise exercises his official responsibilities in an off-duty encounter, typically acts under color of state law. *Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015). On the other hand, if a government officer does not act within his scope of employment, then that government officer acts as a private citizen. *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). And as the Court in *Van Ort* explained, while individuals "do, indeed, have a right to be free from state violations of [their] constitutional guarantees," they have "no right to be free from the infliction of such harm by private actors." *Id.*

"That the defendant act under color of state law is 'a jurisdictional requisite for a § 1983 action.'" *Gritchen*, 254 F.3d at 812 (quoting *West v. Atkins*, 487 U.S. 42, 46 (1988)). Thus, dismissal of a Section 1983 claim following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference that the violation was committed by a defendant acting under color of state law. *Naffe*, 789 F.3d at 1036.

---

[3] *Overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986).

15

In *Naffe*, a political activist brought suit against a district attorney and his employer county alleging that the attorney published derogatory articles about her in his blog and on social media. The court held that the defendant's alleged actions, as claimed by the plaintiff, were "insufficiently related to his work as a county prosecutor to constitute state action." *Id.* at 1038. The court noted that the prosecutor had never "purported or pretended to act under color of [state] law" when he blogged about the plaintiff, contrasting the prosecutor's actions with other cases where defendants had specifically associated their conduct with their government positions. *Id.* The court elaborated that the mere fact that the attorney drew on experiences and knowledge he attained as a district attorney to inform his blog posts did not alone transform his actions from private to public. *Id.*

Here, Plaintiffs' factual allegations do not support an inference that any of the Defendants acted under color of state law, as required in a Section 1983 claim, if in fact any of them made the anonymous tip to CalPERS. Just as the attorney in Naffe never claimed to be speaking on social media in his capacity as a county prosecutor, the anonymous tipper here did not purport to CalPERS to be any person associated with BH or BHPD, and thus, cannot be said to have acted in their official capacity. Making anonymous tips, as opposed to engaging in legitimate fact-finding and investigation with another government agency, cannot be said to sufficiently relate to the official work responsibilities of any of the Defendants.

Nor does it make sense for anyone to have done so for the benefit of BH. The plaintiffs allegedly would be testifying against the individual defendants in their disputes with BH, and thus acting in favor of BH. Why would the City want to interfere with that?

Lastly, as explained in *Naffe*, the fact that a Defendant may have drawn on knowledge of the existence of the settlement agreement, gained due to their employment in the City, to make the anonymous tip, does not alone transform the Defendant's action from private to public.

Under these facts and existing law, Plaintiffs cannot support a claim that any of the Defendants acted under color of state law if in fact any of them made the anonymous tip.

## II. THE SECOND AMENDED COMPLAINT LACKS *MONELL* ALLEGATIONS WHICH ARE NEEDED TO MAKE BH LIABLE.

A municipality cannot be held liable under Section 1983 on a respondeat superior theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Instead, to establish municipal liability for a constitutional violation under Section 1983, the plaintiff must allege facts demonstrating "that an 'official policy, custom, or pattern' on the part of [defendant] was the moving force behind the plaintiff's claimed constitutional violation. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Plaintiffs' SAC sets forth no factual allegations that the City or the Police Department has an official policy, custom, or pattern of violating First Amendment rights by causing individuals to be deprived of their disability benefits. Plaintiffs do not cite to any policy to support their contention, let alone that any such policy is the "moving force" behind Plaintiffs' claimed constitutional violation.

Nor does it allege any custom or pattern. Plaintiffs do not allege that this type of violation has ever occurred in the past, nor that the violation is a "longstanding practice or custom which constitutes [the City's or Police Department's] standard operating procedure." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). Municipal liability cannot be "predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), holding modified by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *see also Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir.

1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy).

Because Plaintiffs fail to present any factual allegations to support a § 1983 claim against the City, Plaintiffs' claim should be dismissed.

## CONCLUSION

In light of the foregoing, Defendant City of Beverly Hills requests that the Court dismiss Plaintiffs' Second Amended Complaint without leave to amend.

Dated: July 6, 2023.             Respectfully submitted,

                              CARPENTER, ROTHANS & DUMONT, LLP

                              By: /s/ *John J. Stumreiter*
                              Mark Rutter/John J. Stumreiter/Esther Teixeira
Attorneys for Defendants City of Beverly Hills, a public entity (sued as itself and erroneously sued as Beverly Hills Police Department); Capt. Max Subin, Shelly Ovrom, Lt. Kevin Orth, Sgt. Dale Drummond, Lt. Renato Moreno, Capt. Mark Rosen, Lt. Shan Davis, Lt. Terry Nutall, Capt. Elizabeth Albanese, and Det. Mark Schwartz, as current or former employees of the City of Beverly Hills

**Certificate of compliance**

The undersigned counsel of record for above-named defendants certefes that this brief contains 3,459 words, which complies with the word limit of L.R. 11-6.1.

/s/ *John J. Stumreiter*

07/06/23