O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CEJA, an individual, FINN O' MCCLAFFERTY, an individual, BRIAN WEIR, an individual,, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF BEVERLY HILLS, a California municipal corporation, THE BEVERLY HILLS POLICE DEPARTMENT, a municipal agency, CAPT. MARK ROSEN, an individual, CAPT. LINCOLN HOSHINO, an individual, CAPT. ELIZABETH ALBANESE, an individual, CAPT. MAX SUBIN, an individual, SHELLY OVROM, an individual, LT. DAVID HAMEL, an individual, LT. SHAN DAVIS, an individual, LT. TERRY NUTALL, an individual, LT. RENATO MORENO, an individual, CHIEF DAVID SNOWDEN, an individual, OFFICER ANNE MARIE LUNSMAN, an individual, LT. KEVIN ORTH, an individual, SGT. DALE DRUMMOND, an individual, DET. MARK SCHWARTZ, an individual, and DOES ONE through ONE HUNDRED (1-100), <br><br> Defendants. | Case No.: 2:22-cv-05884-MEMF-AGR <br><br> **ORDER GRANTING IN PART MOTION TO DISMISS AND GRANTING REQUEST FOR JUDICIAL NOTICE [ECF NOS. 51, 54]** |

1

Before the Court are a Motion to Dismiss and Request for Judicial Notice filed by Defendants Elizabeth Albanese, Shan Davis, Dale Drummond, Renato Moreno, Terry Nutall, Kevin Orth, Shelley Ovrom, Mark Rosen, Mark Schwartz, Max Subin, The City of Beverly Hills. ECF Nos. 51, 54. For the reasons stated herein, the Court DENIES the Request for Judicial Notice and GRANTS IN PART the Motion to Dismiss.

## BACKGROUND

### I.  Factual Background[1]

Plaintiffs Richard Ceja ("Ceja"), Finn O'McClafferty ("O'McClafferty"), and Brian Weir ("Weir," or collectively with Ceja and O'McClafferty, "Plaintiffs") are individuals residing in California. *See* SAC ¶¶ 3–5. All three are former employees of the Beverly Hills Police Department ("BHPD"). *See id.* ¶¶ 3–5.

Defendant City of Beverly Hills ("BH") is a municipal corporation in California. *See id.* ¶ 6. Defendant BHPD is an agency of BH. *See id.* ¶ 7. Defendants Mark Rosen ("Rosen"), Lincoln Hoshino ("Hoshino"), Elizabeth Albanese ("Albanese"), Max Subin ("Subin"), Shelly Ovrom ("Ovrom"), Shan Davis ("Davis"), David Hamel ("Hamel"), Terry Nutall ("Nutall"), Ranato Moreno ("Moreno"), David Snowden ("Snowden"), Anne Marie Lunsman ("Lunsman"), Kevin Orth ("Orth"), Dale Drummond ("Drummond"), and Mark Schwartz ("Schwartz")[2] are individuals residing in California. *See id.* ¶¶ 8–21. All of the Individual Defendants were employees of BH or BHPD during the relevant time period. *See id.* ¶¶ 8–21.

Two different factions have long competed for control of BH and BHPD. *See id.* ¶ 27. One faction seeks to encourage or tolerate abuses of power by BHPD officers, while the other faction

---

[1] Unless otherwise indicated, the following factual background is derived from Plaintiffs' Second Amended Complaint. ECF No. 49 ("SAC"). For the purposes of the Motion to Dismiss, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

[2] The Court will refer to all Defendants (BH, BHPD, Rosen, Hoshino, Albanese, Subin, Ovrom, Davis, Hamel, Nutall, Moreno, Snowden, Lunsman, Orth, Drummond, and Schartz) as "Defendants" where appropriate. The Court will refer to the individuals (Rosen, Hoshino, Albanese, Subin, Ovrom, Davis, Hamel, Nutall, Moreno, Snowden, Lunsman, Orth, Drummond, and Schartz) as the "Individual Defendants."

seeks to foster conduct consistent with the law inside BHPD. *See id.* The Individual Defendants are associated with the first group. *See id.*

Plaintiffs were known during their tenure at BHPD for being "by the book" and not tolerating bad behavior. *See id.* ¶ 28. Starting in or around 2011, Plaintiffs took stands against bad conduct by Lunsman, Orth, Drummond, and Schartz. *See id.* ¶ 29. In response, the first faction (which seeks to tolerate abuses of power) brought meritless charges of wrongdoing against Plaintiffs. *See id.* ¶ 30.

In 2015, Plaintiffs sued BHPD. *See id.* ¶ 32. The parties settled the lawsuit. *See id.* The settlement agreement included a clause that "[t]he City will not take any action in bad faith to interfere with [Plaintiff's] CalPERS[3] rights." *See id.* The terms of the settlement agreement and other information regarding Plaintiffs, including "the Brady list status of the Plaintiffs and Pitches Protected Information,"[4] were known only Plaintiffs, the Defendants in this action, and their respective counsel. *See id.*

Between 2017 and 2019, the second faction (which sought to foster conduct consistent with the law inside BHPD) was in control of BHPD. *See id.* ¶ 33. Certain members of the other faction (which sought to encourage or tolerate abuses of power by BHPD officers) filed lawsuits against BHPD during this time period. *See id.* Plaintiffs offered to testify on behalf of the second faction in defense against this litigation and were preparing to do so. *See id.* In retaliation, Defendants sent CalPERS anonymous tips regarding the language of the previously described settlement agreements

---

[3] CalPERS is the California Public Employees' Retirement System. The Court understands the reference to "CalPERS rights" to mean Plaintiffs' rights to a pension or similar benefits from CalPERS.

[4] The Court understands the reference to "Pitches" to be a clerical error and that the Complaint was meant to read "Pitchess." In any event, although the Complaint does not make this explicit, the Court understands "the Brady list status of the Plaintiffs and Pitches Protected Information" to refer to any files from BHPD that may contain descriptions of alleged misconduct or similar information regarding Plaintiffs. *See Ass'n for Los Angeles Deputy Sheriffs v. Superior Ct.*, 447 P.3d 234, 239 (Cal. 2019) ("The so-called *Pitchess* statutes, however, restrict a prosecutor's ability to learn of and disclose certain information regarding law enforcement officers. [citation to *Pitchess v. Superior Court*, 522 P.2d 305 (Cal. 1974)]. Most notably, [California] Penal Code section 832.7 renders confidential certain personnel records and records of citizens' complaints, as well as information 'obtained from' those records . . . some law enforcement agencies have created so-called *Brady* lists. These lists enumerate officers whom the agencies have identified as having potential exculpatory or impeachment information in their personnel files — evidence which may need to be disclosed to the defense under *Brady* [*v. Maryland* 373 U.S. 83 (1963)] and its progeny.")

between Plaintiffs and BHPD, and regarding the Brady list status of at least one Plaintiff. *See id.* The anonymous tips complained of the *de facto* confidential nature of the settlement agreement and suggested that there was a conspiracy to keep the circumstances of Plaintiffs' departure from BHPD secret. *See id.* As a result of these communications, CalPERS determined that Plaintiffs were not eligible for certain benefits, costing Plaintiffs over $5,000,000. *See id.*

Plaintiffs are not certain at this time who sent the anonymous tips to CalPERS. *See id.* ¶¶ 34–47. Plaintiffs allege, in the alternative, that each of the individual Defendants (Rosen, Hoshino, Albanese, Subin, Ovrom, Davis, Hamel, Nutall, Moreno, Snowden, Lunsman, Orth, Drummond, and Schwartz) "primarily drafted or participated in the drafting of one or more" of the anonymous tips. *See id.* ¶¶ 34–47. Plaintiffs further allege that Defendants (including BH and BHPD) "conspired to keep secret their respective specific roles in [their] conspiracy to retaliate against the Plaintiffs." *See id.* ¶ 48.

## II. Procedural History

Plaintiffs filed suit in this Court on August 18, 2022. *See* ECF No. 1. Plaintiffs filed a First Amended Complaint[5] on March 8, 2023. *See* ECF No. 40. Plaintiffs filed their SAC on June 6, 2023. *See* SAC. The SAC asserts one cause of action: a claim under 42 U.S.C. Sections 1983 and 1988 for violations of constitutional free speech rights. *See id.*

Defendants[6] filed their Motion to Dismiss on July 6, 2023. ECF No. 51 ("Motion" or "Mot."). Defendants filed an attorney declaration in support of the Motion (describing meet and confer efforts) and a Request for Judicial Notice with exhibits on July 7, 2023. ECF No. 53 ("Stumreiter Declaration"); ECF No. 54 ("RJN"); ECF Nos. 54-1–54-6 (Exhibits to RJN). Plaintiffs filed an Opposition to the Motion on October 26, 2023. ECF No. 55 ("Opposition" or "Opp'n"). Plaintiffs filed an Errata to their Opposition, describing small corrections, on November 9, 2023.

---

[5] In their Opposition, Plaintiffs noted in a parenthetical that they "ask this Court to take judicial notice" of the Complaint and First Amended Complaint. *See* Opp'n at 1. The Court finds it unnecessary to take formal judicial notice of these items as they are already part of the docket in this action, which the Court can reference without taking judicial notice of.

[6] BH asserts that it was erroneously sued as both BH and BHPD, and therefore BHPD does not join the Motion. *See* Mot. at 6. All other Defendants joined the Motion. *See id.*

4

ECF No. 57 ("Opp'n Errata"). Plaintiffs did not oppose Defendants' Request for Judicial Notice. Defendants filed a Reply in support of the Motion on November 9, 2023. ECF No. 58 ("Reply").

## REQUEST FOR JUDICIAL NOTICE (ECF NO. 54)

### I. Applicable Law

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) ("Rule 201"). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Once a fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)). A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689–90.

A Court may take judicial notice of a document and consider it in analyzing a motion to dismiss. *See Corinthian Colleges*, 655 F.3d at 998. In order to do so, the document must satisfy both the *Corinthian Colleges* test and the requirements of Rule 201. *See id.* (first considering whether document was referenced in and central to complaint, and second considering Rule 201). However, a Court may also consider certain documents in deciding a motion to dismiss without taking judicial notice of the documents. *See Marder*, 450 F.3d at 448 (finding documents may be considered in deciding motion to dismiss, based on a test identical to the one in *Corinthian Colleges*, without

taking judicial notice of the documents). In some circumstances, it may be appropriate to deny a request for judicial notice, avoiding the obligation to instruct the jury on the trust of a document, but nevertheless consider the document as evidence in deciding a motion to dismiss. *See id.*

**II. Discussion**

Defendants request that the Court take judicial notice of five items: (1) O'McClafferty's Retirement and General Release Agreement, signed July 6, 2015 (ECF No. 54-1); (2) Ceja's Settlement Agreement and Release of Claims with the City of Beverly Hills, dated Sept. 11, 2015 (ECF No. 54-2); (3) Weir's Settlement Agreement and Release of Claims with City of Beverly Hills, dated May 13, 2016 (ECF No. 54-3); (4) The April 28, 2021, proposed decision issued by Administrative Law Judge Eric Sawyer, California Office of Administrative Hearings ("OAH"), re Industrial Disability Retirement ("IDR") eligibility of O'McClafferty, Ceja, and Weir, OAH No. 2020090244 (ECF No. 54-4); and (5) CalPERS Board of Administration's adoption of the proposed decision re IDR eligibility of McClafferty, Ceja, and Weir, Case No. 2020-0325 (ECF Nos. 54-5, 54-6). *See* RJN. Plaintiffs do not object to this request.

The Court finds that these documents are not appropriate for judicial notice. The existence of these documents and the facts contained within them are not "generally known within the trial court's territorial jurisdiction." *See* Fed. R. Evid. 201(b). Nor can they be "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See id.* These documents are not public records (at least based on the information available to the Court) and the Court cannot verify their accuracy. The documents thus do not meet the requirements of Rule 201. *See* Fed. R. Evid. 201(b). For this reason, the RJN is DENIED.

However, the Court nevertheless finds it appropriate to consider these documents in deciding the Motion. *See Marder*, 450 F.3d at 448 (finding documents may be considered in deciding motion to dismiss, without taking judicial notice of the documents). The documents at issue meet all requirements of the *Corinthian Colleges* test. *See Corinthian Colleges*, 655 F.3d at 998. First, the documents are referenced in the complaint. *See id.* (first requirement is that "the complaint refers to the document"). The SAC explicitly refences settlements agreements between Plaintiffs and BH, which the Court understands to be the documents at ECF Nos. 54-1, 54-2, and 54-3. *See* SAC ¶ 32.

The Complaint also references a decision by CalPERS to deny certain benefits to Plaintiffs, which the Court understands as a reference to the other two documents at issue. *See* SAC ¶ 33. These documents are central to the complaint, because the thrust of Plaintiffs' claim is that Defendants violated and/or undermined the settlement agreements and caused CalPERS's decision. *Corinthian Colleges*, 655 F.3d at 998 (second requirement is that "the document is central to the plaintiff's claim"). Finally, Plaintiffs have not questioned the authenticity of the documents. *See id.* (third requirement is that "no party questions the authenticity of the document"). The Court therefore finds that it is appropriate to consider these documents in deciding the Motion. This is notwithstanding the denial of the RJN.

## MOTION TO DISMISS (ECF NO. 51)

### I. Applicable Law

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee*, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II. Discussion

The Court finds that Plaintiffs have adequately stated a claim against the Individual Defendants, but not against BH or BHPD, and therefore the Motion will be GRANTED IN PART.

### A. The SAC adequately identifies each Individual Defendants' role in the alleged conduct.

Defendants' first argument is that the SAC does not allege how each defendant "personally participated to cause the deprivation of the plaintiff's rights." *See* Mot. at 12. This argument fails.

A plaintiff bringing a claim under 42 U.S.C. Section 1983 ("Section 1983") "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The SAC meets this standard.

The SAC specifically alleges that each Individual Defendant[7] "primarily drafted or participated in the drafting of one or more" of the anonymous tips to CalPERS. *See id.* ¶¶ 34–47. This allegation is sufficiently specific to describe each individual's actions.[8] The allegation is one of fact, not a legal conclusion, and is plausible in context. *See Twombly*, 550 U.S. at 570. Each Defendant is on notice as to what exactly he or she is alleged to have done. Defendants appear to take issue with the *way* in which Plaintiffs allege identical conduct as to each Defendant. *See* Mot. at 13. But it is well settled that a plaintiff may plead in the alternative—in other words, a plaintiff may allege that different defendants engaged in the same alleged conduct and use discovery to determine which defendant is actually liable. *See McCalden v. California Library Ass'n*, 955 F2d 1214, 1219 (9th Cir. 1990) (superseded by rule on other grounds as recognized by *Harmston v. City & County of San Francisco*, 627 F3d 1273, 1279-80 (9th Cir. 2010)). The only limitation is that a plaintiff must plead specific facts that put each Defendant on notice of what he or she is accused of, and these facts

---

[7] The SAC does not clearly identify BH or BHPD's role in the alleged anonymous tip. However, Defendants did not raise this argument. The Court will dismiss the claims against BH and BHPD for different reasons as described below and need not reach the question of whether BH's or BHPD's role was described with sufficient specificity.

[8] For this section—which analyzes whether the allegations as to each Defendant are sufficiently specific—the Court assumes that the alleged conduct would amount to a constitutional violation and analyzes only whether the Defendants' actions are described with requisite specificity. Whether the conduct actually amounts to a constitutional violation is a distinct issue.

must state a plausible claim for relief. *See Iqbal*, 556 U.S. at 676. The SAC meets this standard. It is useful to consider whether the SAC would pass muster if only one Individual Defendant were accused of making the report as described above. The Court's view is that this hypothetical SAC would be plainly sufficient, as it would allege a plausible fact and clearly inform the one defendant of what he or she was accused of. Making the same allegation as to multiple defendants does not change the analysis. *See McCalden*, 955 F2d at 1219. The SAC sufficiently identifies each Defendants' alleged role, and so the Motion will not be granted on this basis.

### B. Plaintiffs adequately allege causation.

Defendants next argue that Plaintiffs have not alleged that Defendants' alleged conduct caused Plaintiffs' injury. *See* Mot. at 13–15. Defendants argue that CalPERS's decision is what caused Plaintiffs' harm. *See id.* This argument also fails.

General tort principles of causation govern Section 1983 claims. *See Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."). If the natural consequence of a government employee's actions is that another actor deprived a plaintiff of the plaintiff's civil rights, the government actor may be liable. *See id.* Thus, for example, an officer who applies for a warrant that leads to other officers making unconstitutional arrests may be held liable for his action in applying for the warrant. *See id.* at 344–45.

"Tort law measures causation by reference to two standards: proximate and but-for cause." *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 942 (9th Cir. 2020). "Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct." *Id.* Proximate cause "precludes liability only where the casual link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity" *Id.* But-for causation "exists where the alleged injury or result would not have occurred 'but for' that conduct. *Id.*

Here, there is no doubt that Plaintiffs adequately alleged that the anonymous tip was a but-for cause of losing their benefits.[9] *See* SAC ¶ 33. The only question is whether Defendants' alleged conduct was a proximate cause.

The Court finds that, drawing all inferences in favor of Plaintiffs, the alleged anonymous tip was a proximate cause of Plaintiffs losing their benefits. A plausible inference from the Complaint is that whoever made the tip did so with the understanding that the tip would likely cause Plaintiffs to lose benefits, and that the tip-maker intended this result. *See* SAC ¶ 33. This result was plainly foreseeable, and not a "mere fortuity," which would be sufficient to satisfy proximate cause. *See Reynaga Hernandez,* 969 F.3d at 942.

Defendants' arguments otherwise are unavailing. First, Defendants correctly note that CalPERS made the ultimate decision, and that Defendants could not have made it alone. *See* Mot. at 14. But this misses the mark of the inquiry—a Section 1983 defendant may be liable for a decision or action made by others if the defendant undertook conduct where the other decision or action was a natural consequence. *See Malley*, 475 U.S. at 344 n.7. Second, Defendants argue that the reports made to CalPERS were true. *See* Mot. at 14. This may be the case, but it is not relevant to the causation inquiry. Whether Defendants' actions were wrongful is a distinct question from whether the actions caused the harm. Third, Defendants cite *Morse v. North Coast Opportunities, Inc.*, which held that the government cannot be liable for a private actor's decision unless the decision can be "fairly attributed to the government." *Morse v. N. Coast Opportunities, Inc.* 118 F.3d 1338, 1343 (9th Cir. 1997). *Morse* considered facts significantly different than those here, where the government authorized a private actor "to approve firing decisions," but did not otherwise take any action that made the alleged conduct foreseeable. *See id.* Here, by contrast, Defendants are not alleged to have simply allowed CalPERS to act—rather, they are alleged to have taken a specific action done with the hope that CalPERS would act in a predictable way in response. *See* SAC ¶ 33. Finally,

---

[9] The conclusion that the anonymous tip was the but-for cause is further supported by the proposed decision issued by Administrative Law Judge Eric Sawyer regarding Plaintiffs' appeal of CalPERS initial decision, which CalPERS eventually adopted. *See* ECF Nos. 54-4, 54-5, 54-6. Judge Sawyer noted at the outset that PERS made its decisions "after receiving an anonymous ethical complaint, resulting in its investigation." ECF No. 54-4 at 3.

Defendants cite *Iqbal*, which noted that discrimination was not a plausible inference from the fact of an arrest where there was an "obvious alternative explanation." *Iqbal*, 556 U.S. at 682. This portion of *Iqbal* addressed a different issue and has little relevant to causation.

In sum, the Court finds that Plaintiffs adequately alleged causation, and so will not grant the Motion on this basis.

### C. Plaintiffs adequately allege that the anonymous tip was made under color of law.

Defendants next argue that Plaintiffs have not alleged that the anonymous tip was made under color of law as required for Section 1983. *See* Mot. at 15–17. This argument fails as well.

For there to be liability under Section 1983, the alleged conduct must have been "committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986). "If a government officer does not act within his scope of employment or under color of state law, then that government officer acts as a private citizen," and there is no liability under Section 1983. *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). Applying these principles, courts have held, for example, that a district attorney who wrote a blog outside of working hours was not acting under color of law and could not be liable under Section 1983. *Naffe v. Frey*, 789 F.3d 1030, 1038 (9th Cir. 2015). The court explained that the district attorney's actions were not "related to his work as a county prosecutor" and that the blog made clear that "although he worked for Los Angeles County, he blogged and Tweeted only in his personal capacity." *See id.*

Here, a reasonable inference from the facts alleged is that whoever made the anonymous tip was acting within the scope of his or her employment in doing so. First, the information included in the tip was only available to police officers (*see* SAC ¶ 32), a fact that CalPERS may have understood and used to conclude that the report came from a police officer. That the report came from a police officer would bolster its reliability. Second, there are open questions as to when the tip was made and what it included. It is possible that it was made during working hours, and that it did not state that it was made in the writer's personal capacity. These are plausible inferences, and if true, they would significantly distinguish from *Naffe*. *See Naffe*, 789 F.3d at 1038. Third, another possibility (and plausible inference) is that the tip identified itself as coming from within BHPD,

which would suggest it was made under color of law. In sum, Plaintiffs will need to eventually show that the tip was made in a way that meets the color of law standard described above, but at this stage, Plaintiffs have pleaded sufficient facts to support a plausible inference that it was. Plaintiffs' claim will not be dismissed on this basis.

### D. The claims against BH and BHPD fail because Plaintiffs have not alleged that the conduct was pursuant to any policy, custom, or practice.

Defendants' final argument is that BH and BHPD cannot be liable because Plaintiffs have not alleged that any "official policy, custom, or pattern" caused the claimed constitutional violation. *See* Mot. at 17–18. Plaintiffs argue in response that the relevant policy is BHPD's alleged general policy of allowing abuses of power and of implementing subsidiary policies to meet this end. *See* Opp'n at 10, citing SAC ¶ 27. The Court finds that the alleged policy is not sufficiently specific to establish liability against a public entity for the conduct alleged here. The claims against BH and BHPD will therefore be dismissed.

To establish *Monell* liability under Section 1983, a plaintiff must sufficiently allege that: "(1) [he was] deprived of [his] constitutional rights by defendants and their employees acting under color of state law; (2) the defendants have customs or policies which amount to deliberate indifference to [his] constitutional rights; and (3) these policies are the moving force behind the constitutional violations." *Lee*, 250 F.3d at 681–82.

Here, the sole relevant allegation is the one discussed above—that certain elements within the BHPD seek to allow abuses of power and implement unspecific policies to that effect. *See* SAC ¶ 27. This allegation is not sufficiently specific. First, Plaintiffs have neither alleged what the policies or practices are nor alleged any facts (other than one instance of the anonymous tip) that support the notion that the policies exist. Second, it is not clear how these policies were the moving force behind the anonymous tip. Plaintiffs need more detail to hold BH or BHPD liable under *Monell*.

In their Opposition, Plaintiffs describe the policies with some more specificity, as policies "of punishing its current and former police officers when they speak out -- or offer to testify -- regarding the departments systematic and endemic violations of law and Constitutional rights." Opp'n at 10. But the SAC does not allege this. *See* SAC. The Court need not reach the issue of

whether such an allegation might be sufficient (or whether it is conclusory absent further facts), because it is simply not contained in the operative complaint.

For this reason, the claims against BH and BHPD will be dismissed. This dismissal will be with leave to amend, as further allegations might state a claim. *See Manzarek*, 519 F.3d at 1031.

## CONCLUSION

For the reasons stated herein, the Court ORDERS as follows:

1. Defendants Request for Judicial Notice (ECF No. 58) is DENIED, but the Court nevertheless considered the documents that Defendants requested notice of in deciding the Motion to Dismiss.

2. Defendants' Motion to Dismiss (ECF No. 51) is GRANTED IN PART. Plaintiffs' claim is DISMISSED WITH LEAVE TO AMEND as to BH and BHPD. Plaintiffs' claim is not dismissed as to the Individual Defendants. (Rosen, Hoshino, Albanese, Subin, Ovrom, Davis, Hamel, Nutall, Moreno, Snowden, Lunsman, Orth, Drummond, and Schartz).

IT IS SO ORDERED.

Dated: December 1, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge